******************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.
******************************************

# JENNIYAH GEORGES ET AL. *v.* OB-GYN SERVICES, P.C., ET AL.
## (SC 20170)

Palmer, McDonald, D'Auria, Mullins, Kahn, Ecker, Js.*

*Syllabus*

The plaintiffs, L and L's minor daughter, G, sought damages for personal injuries that G had sustained allegedly as a result of the defendants' medical malpractice. Prior to trial, the plaintiffs filed an offer of compromise for $2 million, which the defendants did not accept. On October 28, 2016, the trial court accepted the jury verdict awarding the plaintiffs $4.2 million against both of the defendants. Subsequently, the plaintiffs filed a motion for statutory (§ 52-192a (c)) offer of compromise interest and for statutory (§ 37-3b) postjudgment interest. On November 28, 2016, evidently as a result of a clerical error, an entry was placed on the case docket, stating "judgment on verdict for plaintiff." On December 12, 2016, the court awarded the plaintiffs both offer of compromise and postjudgment interest. On December 16, 2016, the defendants filed an appeal with the Appellate Court, challenging both the jury verdict and the trial court's awards of offer of compromise and postjudgment interest. The plaintiffs filed a timely motion to dismiss the appeal, claiming that the defendants had failed to file the appeal within twenty days of the date that judgment was rendered, as required by the rule of practice (§ 63-1 (a)) governing the time to appeal. The defendants filed an objection to that motion, claiming that their appeal from the judgment rendered in accordance with the jury verdict was timely because they filed it within twenty days of the trial court's December 12, 2016 awards of offer of compromise and postjudgment interest. The defendants also filed a motion to suspend the rules of practice to permit the filing of a late appeal pursuant to the applicable rules of practice (§§ 60-2 (5) and 60-3), claiming, in the alternative, that there was good cause to permit the late appeal in light of the confusion in the trial court concerning the date the judgment was rendered. The Appellate Court dismissed as untimely that portion of the defendants' appeal challenging the jury verdict and, in doing so, denied the defendants' motion to suspend the rules of practice to permit a late appeal. The Appellate Court also upheld the trial court's awards of offer of compromise and postjudgment interest. On the granting of certification, the defendants appealed to this court. *Held*:

1. The Appellate Court properly dismissed as untimely the portion of the defendants' appeal challenging the jury verdict, there having been no merit to the defendants' claim that, although they did not file their appeal within twenty days of the date on which the judgment was rendered in accordance with the jury verdict, and did not file a request for an extension of time or a postverdict motion, their appeal was nonetheless timely because the appeal period should have been measured from the date of the trial court's awards of offer of compromise and postjudgment interest, rather than the date the trial court accepted the jury verdict:

a. The defendants could not prevail on their claim that the judgment did not become final for purposes of appeal when the trial court accepted the jury verdict insofar as the court had yet to determine whether, or how much, offer of compromise interest should be awarded under § 52-192a, as a determination of the amount of offer of compromise interest is not an essential prerequisite to an appealable final judgment on the merits, because, although the presence of an unresolved claim for relief can delay the finality of a judgment on the merits, offer of compromise interest is not part of the plaintiffs' compensation for the alleged wrongdoing or unlawful conduct that gave rise to the underlying action, and, thus, a decision regarding offer of compromise interest does not require an assessment of the merits of the underlying case; moreover, under § 52-192a (c), trial courts have no discretion to determine if, or how much, offer of compromise interest should be awarded, as that statute requires that such interest be awarded when the amount of the verdict is equal to or exceeds the offer of compromise and prescribes the precise

formula for calculating it.

b. The defendants could not prevail on their claim that, under Practice Book § 63-1 (c) (1), which provides for the tolling of the twenty day appeal period when a motion filed within the original twenty day appeal period seeks an alteration to the terms of the judgment, the plaintiffs' motion for offer of compromise and postjudgment interest created a new twenty day period within which the defendants could appeal from the judgment rendered in accordance with the jury verdict: the awards of offer of compromise and postjudgment interest, although increasing the plaintiffs' overall recovery, did not alter the amount of compensatory damages the jury previously had awarded, and, accordingly, the plaintiffs' motion for such interest did not seek an alteration of the judgment within the meaning of Practice Book § 63-1 (c) (1); moreover, federal precedent interpreting an analogous federal rule of appellate procedure (Fed. R. App. Proc. 4 (a) (4)) supported the view that postverdict motions for statutory interest do not seek an alteration to the underlying judgment.

2. The Appellate Court did not abuse its discretion in denying the defendants' motion to suspend the rules of practice to permit a late appeal, as the defendants failed to establish good cause: despite the defendants' claim that there was widespread confusion in the trial court about the date the judgment was rendered, there was no reasonable basis for any such confusion, as the rules of practice (§§ 17-2 and 63-1 (b)) directing trial courts to render judgments on jury verdicts and providing that the appeal period begins to run when the verdict is accepted, plainly should have put the defendants' counsel on notice that, when the trial court accepted the verdict on October 28, 2016, and no subsequent motions were filed under the rules of practice (§§ 16-35 and 17-2A) governing certain postverdict motions, a final judgment had been rendered and the twenty day appeal period had begun to run, and the erroneous entry placed on the case docket suggesting that the judgment had been rendered for the plaintiffs on November 28, 2016, was of no moment because the twenty day appeal period had expired eleven days before that entry appeared on the docket; moreover, the Appellate Court reasonably concluded that the defendants had failed to show good cause on the basis of their claimed good faith belief that there was no appealable final judgment until the trial court issued its decision awarding interest on December 12, 2016, as established final judgment principles should have put the defendants' counsel on notice that offer of compromise interest is not a type of relief that delays finality, and nothing in the text of Practice Book § 63-1 (c) (1), or Connecticut case law interpreting it, remotely suggested that a postjudgment motion for mandatory interest, such as the plaintiffs' motion in the present case, alters any aspect of the underlying judgment; furthermore, contrary to the defendants' claim, the size of the verdict did not render the Appellate Court's refusal to hear the appeal challenging the jury verdict an abuse of discretion, particularly in light of the wholly inadequate explanations proffered by the defendants for why they failed to appeal until approximately one month after the deadline, and, although the gravity of the consequences of a dismissal to the appealing party is not wholly irrelevant to a good cause analysis, under the circumstances of the present case, the size of the verdict, in and of itself, did not compel the conclusion that the Appellate Court abused its discretion.

(*Two justices concurring in part and dissenting in part in one opinion*)

Argued October 23, 2019—officially released June 3, 2020**

*Procedural History*

Action to recover damages for, inter alia, medical malpractice, and for other relief, brought to the Superior Court in the judicial district of New London, where the plaintiff Jean Georges withdrew from the action; thereafter, the case was tried to the jury before *Vacchelli, J.*; verdict and judgment for the named plaintiff and in part for the plaintiff Marie Leoma; subsequently, the court granted the motion of the named plaintiff et al. for offer of compromise and postjudgment interest, and the defendants appealed to the Appellate Court,

which granted in part the motion of the named plaintiff et al. to dismiss the appeal and denied the defendants' motion to suspend the rules of practice to permit a late appeal; thereafter, this court dismissed the defendants' petition for certification to appeal; subsequently, the Appellate Court, *Keller*, *Prescott* and *Bright*, *Js.*, affirmed the judgment of the trial court as to offer of compromise and postjudgment interest, and the defendants, on the granting of certification, appealed to this court. *Affirmed.*

*David J. Robertson*, with whom, on the brief, was *Malaina J. Sylvestre*, for the appellants (defendants).

*Alinor C. Sterling*, with whom were *James D. Horwitz* and, on the brief, *Cynthia C. Bott*, for the appellees (named plaintiff et al.).

*Jeffrey R. Babbin* and *Christopher P. Kriesen* filed a brief for the Connecticut Defense Lawyers Association as amicus curiae.

*Opinion*

MULLINS, J. The defendants, OB-GYN Services, P.C., and Brenda Gilmore, appealed from the judgment of the trial court rendered following a jury verdict in favor of the plaintiff Marie Leoma and the named plaintiff, Jenniyah Georges, Leoma's minor daughter, on certain medical malpractice claims.[1] The Appellate Court, however, granted in part the plaintiffs' motion to dismiss the appeal as untimely and denied the defendants' motion to suspend the rules of practice to permit a late appeal. On appeal to this court, the defendants claim that the Appellate Court (1) improperly granted the plaintiffs' motion to dismiss the portion of the appeal challenging the jury's verdict as untimely, and (2) abused its discretion in denying their motion to suspend the rules of practice to permit a late appeal. We disagree and, accordingly, affirm the judgment of the Appellate Court.

The record reveals the following relevant facts and procedural history. The plaintiffs filed their original complaint on December 12, 2011. In that complaint, the plaintiffs alleged that the defendants committed malpractice during Leoma's pregnancy and labor, and during the delivery of Jenniyah Georges, causing Jenniyah Georges to sustain severe, permanent injuries. On May 16, 2013, the plaintiffs filed an offer of compromise directed to both defendants, offering to settle the claim for $2 million. The defendants did not accept the offer of compromise, which resulted in it being deemed rejected thirty days later by operation of law.[2] A jury trial ensued.

On October 28, 2016, the jury returned a verdict for the plaintiffs of $4.2 million as against both defendants. The trial court accepted the verdict that same day. The defendants did not file any postjudgment motions challenging the jury's verdict.

On November 8, 2016, the plaintiffs filed a motion seeking offer of compromise interest. The plaintiffs argued that they were entitled to such interest pursuant to General Statutes § 52-192a (c)[3] and Practice Book § 17-18 because the defendants failed to accept the plaintiffs' offer of compromise for $2 million and the jury's verdict of $4.2 million exceeded that amount. The plaintiffs' motion also sought postjudgment interest under General Statutes § 37-3b.[4] The defendants filed an objection to the plaintiffs' motion. On November 28, 2016, evidently as a result of a clerical error, an entry was placed on the electronic docket, stating "judgment on verdict for plaintiff."

On December 12, 2016, the trial court issued a memorandum of decision, awarding the plaintiffs both offer of compromise and postjudgment interest. With respect to offer of compromise interest, the court concluded that the "end date" for calculating the interest was the date the judgment was rendered and clarified that the judgment was rendered on October 28, 2016—the date

the verdict was accepted by the court—not November 28, 2016. The court clarified that the docket entry made on November 28, 2016, which referenced November 28, 2016, as the date of the judgment, had been made in error. The court awarded the plaintiffs $1,639,496.55 in offer of compromise interest. The trial court also awarded the plaintiffs postjudgment interest under § 37-3b, to be calculated at 10 percent per year, commencing on November 17, 2016, twenty days from the date of the judgment, "subject to tolling as permitted by statute."

On December 16, 2016, the defendants filed an appeal with the Appellate Court, challenging both the jury's verdict and the trial court's awards of offer of compromise and postjudgment interest.[5] The plaintiffs filed a timely motion to dismiss the appeal or, in the alternative, to dismiss the portion of the appeal challenging the jury's verdict. They claimed that the defendants failed to file the appeal within twenty days of the date the judgment was rendered, as required by Practice Book § 63-1 (a). The defendants filed an objection to that motion, arguing that their appeal from the judgment rendered in accordance with the jury's verdict was timely because they filed it within twenty days of the trial court's December 12, 2016 memorandum of decision awarding the offer of compromise and postjudgment interest. The defendants also filed a motion to suspend the rules of practice to permit a late appeal pursuant to Practice Book §§ 60-2 (5)[6] and 60-3,[7] arguing, in the alternative, that there was "good cause" to permit the late appeal in light of the "significant amount of confusion in the trial court" concerning the date the judgment was rendered. This motion largely focused on the erroneous docket entry of November 28, 2016, listing that date as the date of the judgment.

The Appellate Court granted in part the plaintiffs' motion to dismiss and denied the defendants' motion to suspend the rules of practice to permit a late appeal. This certified appeal followed.[8]

I

The defendants claim that the Appellate Court improperly granted the plaintiffs' motion to dismiss the portion of the defendants' appeal challenging the jury's verdict because the appeal was timely. We disagree.

We review the Appellate Court's decision to dismiss an untimely appeal for abuse of discretion; see, e.g., *Ramos* v. *Commissioner of Correction*, 248 Conn. 52, 53, 59, 61, 727 A.2d 213 (1999); cf. *Kelley* v. *Bonney*, 221 Conn. 549, 559 and n.4, 606 A.2d 693 (1992) (noting that Appellate Court has broad discretion to determine whether to hear late appeal); but questions concerning whether the judgment was final for purposes of appeal, or when the twenty day appeal period began to run, are questions of law over which our review is plenary. See, e.g., *Hylton* v. *Gunter*, 313 Conn. 472, 478, 97 A.3d

970 (2014); *In re Haley B.*, 262 Conn. 406, 410–11, 815 A.2d 113 (2003).

"Unless a different time period is provided by statute, an appeal must be filed within twenty days of the date notice of the judgment or decision is given." Practice Book § 63-1 (a). "In civil jury cases, the appeal period shall begin when the verdict is accepted." Practice Book § 63-1 (b). Likewise, with respect to the date the judgment is deemed to have been rendered in such cases, Practice Book § 17-2 provides in relevant part: "If no motions under Sections 16-35 or [17-2A] are filed, upon the expiration of the time provided for the filing of such motions, judgment on the verdict shall be rendered in accordance with the verdict, and *the date of the judgment shall be the date the verdict was accepted. . . .*" (Emphasis added.)

In the present case, the trial court accepted the jury's verdict on October 28, 2016, which meant that, in the absence of an extension of time or the filing of a postverdict motion by the defendants, the defendants had until November 17, 2016, to appeal from the judgment rendered in accordance with that verdict. The defendants did not file any posttrial motions under Practice Book § 16-35 or Practice Book § 17-2A; nor did they request an extension of the appeal period. The defendants did not file their appeal until December 16, 2016, approximately one month after the deadline. The defendants contend, however, that their appeal was nonetheless timely because they filed it within twenty days of the court's December 12, 2016 decision awarding offer of compromise and postjudgment interest. The defendants argue that the appeal period should be measured from the date of this subsequent decision, rather than the date the verdict was accepted, because (1) there was no appealable final judgment until the court awarded offer of compromise and postjudgment interest, and (2) the plaintiffs' November 8, 2016 motion for interest created a new twenty day appeal period pursuant to Practice Book § 63-1 (c) (1).

We address these questions of law in turn.

A

The first question is whether the date of the final judgment for purposes of appeal is October 28, 2016, the date the trial court accepted the jury's verdict. It is well settled that "the acceptance of the jury verdict at the time it is [returned] is deemed to constitute a final judgment . . . unless a motion to set aside is later filed." (Citations omitted; internal quotation marks omitted.) *Kolich* v. *Shugrue*, 198 Conn. 322, 327, 502 A.2d 918 (1986); see also Practice Book § 17-2. The defendants argue, however, that, in the present case, the judgment did not become final for purposes of appeal when the verdict was accepted because the trial court had yet to determine whether, or how much,

offer of compromise interest should be awarded under § 52-192a.

This court has held that the presence of an unresolved claim for relief can delay the finality of a judgment on the merits. This, however, is the exception to the usual rule and generally applies only if the form of relief being sought "seek[s] compensation for the alleged[ly] wrongful conduct of the defendants, which depend[s] upon an assessment of the underlying merits of the transaction between the parties." (Internal quotation marks omitted.) *Broadnax* v. *New Haven*, 294 Conn. 280, 297, 984 A.2d 658 (2009); see, e.g., *Balf Co.* v. *Spera Construction Co.*, 222 Conn. 211, 215, 608 A.2d 682 (1992) (claim for discretionary prejudgment interest postponed finality of judgment because "[t]he plaintiff's right to such a recovery is part of its claim to be made whole," and "[w]hether it succeeds will depend upon an assessment of the underlying merits");[9] see also *Stroiney* v. *Crescent Lake Tax District*, 197 Conn. 82, 84, 495 A.2d 1063 (1985) (judgment "rendered only [on] the issue of liability without an award of damages" is interlocutory).

Conversely, when the postverdict relief is not designed to compensate the plaintiffs for the underlying wrongdoing and does not require the trial court to examine the merits of the underlying case, it is collateral to the judgment and does not affect its finality for purposes of appeal. See, e.g., *Hylton* v. *Gunter*, supra, 313 Conn. 485 n.12 (noting that award of attorney's fees and litigation costs as part of common-law punitive damages claim would not affect finality of judgment because their "calculation . . . derives from evidence that is collateral to that considered in the main cause of action"); *Paranteau* v. *DeVita*, 208 Conn. 515, 522–23, 544 A.2d 634 (1988) (adopting "bright-line rule" that "a judgment on the merits is final for purposes of appeal even though the recoverability or amount of attorney's fees for the litigation remains to be determined").[10]

Offer of compromise interest plainly falls into the latter category because it does not entail any examination of matters encompassed within the merits of the underlying action. Although offer of compromise interest increases a plaintiff's overall recovery, offer of compromise interest is not part of the plaintiff's compensation *for the alleged wrongdoing or unlawful conduct that gave rise to the underlying action*. See *Paine Webber Jackson & Curtis, Inc.* v. *Winters*, 22 Conn. App. 640, 652–54, 579 A.2d 545 (explaining that, unlike discretionary prejudgment interest, which "constitutes an element of the damages awarded," offer of compromise interest is "unrelated to the underlying [damages claim]"), cert. denied, 216 Conn. 820, 581 A.2d 1055 (1990). Rather, "interest awarded under § 52-192a is *solely* related to a defendant's rejection of an advantageous offer to settle before trial and his subsequent

waste of judicial resources." (Emphasis added; internal quotation marks omitted.) *Blakeslee Arpaia Chapman, Inc.* v. *El Constructors, Inc.*, 239 Conn. 708, 742, 687 A.2d 506 (1997). In other words, an award of offer of compromise interest is punitive, rather than compensatory, in nature. Id., 752; see also *Accettullo* v. *Worcester Ins. Co.*, 256 Conn. 667, 673, 775 A.2d 943 (2001).

Accordingly, a decision regarding offer of compromise interest does not require an assessment of the merits of the underlying case. Under § 52-192a (c), trial courts have no discretion to determine if, or how much, offer of compromise interest should be awarded. The statute *requires* the interest to be awarded if the amount of the verdict is equal to or exceeds the offer of compromise and prescribes the precise formula for calculating it. See footnote 3 of this opinion. "[A]n award of interest under § 52-192a is mandatory, and the application of § 52-192a does not depend on an analysis of the underlying circumstances of the case or a determination of the facts." (Emphasis omitted; internal quotation marks omitted.) *Blakeslee Arpaia Chapman, Inc.* v. *El Constructors, Inc.*, supra, 239 Conn. 752.

We therefore conclude that a determination of the amount of offer of compromise interest to be awarded is not an essential prerequisite to an appealable final judgment on the merits. See *Earlington* v. *Anastasi*, 293 Conn. 194, 196–97 n.3, 976 A.2d 689 (2009) (noting that judgment was final despite failure to award offer of compromise interest "[b]ecause a decision to award such interest pursuant to . . . § 52-192a is severable from the proceedings on the merits and does not require the exercise of discretion"). In the present case, the judgment became final on October 28, 2016, when the court accepted the jury verdict. See Practice Book § 17-2; Practice Book § 63-1 (b). The court's subsequent decision on December 12, 2016, awarding offer of compromise interest, "raise[d] a collateral and independent claim that is separately appealable as a final judgment." *Paranteau* v. *DeVita*, supra, 208 Conn. 523; see id. (determining whether supplemental postjudgment order regarding amount of attorney's fees may raise claim that is separately appealable as final judgment).

B

The defendants next argue that, under Practice Book § 63-1 (c) (1), the plaintiffs' November 8, 2016 motion for offer of compromise interest and for postjudgment interest under § 37-3b created a new twenty day period within which the defendants could appeal from the judgment rendered in accordance with the jury's verdict. They contend that this new appeal period began to run when the court decided that motion on December 12, 2016. We are not persuaded.

Under Practice Book § 63-1 (c) (1), "[i]f a motion is filed within the appeal period that, if granted, *would*

*render the judgment, decision or acceptance of the verdict ineffective* . . . a new twenty day period . . . for filing the appeal shall begin on the day that notice of the ruling is given on the last such outstanding motion . . . ." (Emphasis added.) That subdivision explains that the motions that meet these criteria include, inter alia, "motions that seek . . . any alteration of the terms of the judgment."[11] In determining whether a motion seeks an "alteration" of the terms of the judgment, "we look to the substance of the relief sought by the motion rather than the form." *In re Haley B.*, supra, 262 Conn. 413.

The defendants contend that the plaintiffs' motion for offer of compromise and postjudgment interest altered the terms of the judgment under Practice Book § 63-1 (c) (1) because it "change[d] the judgment from the initial amount of the verdict [$4.2 million], to the amount of the verdict plus offer of compromise interest." We disagree.

The defendants rely on *In re Haley B.*, supra, 262 Conn. 406, which considered the application of Practice Book § 63-1 (c) (1) in a custody dispute. Id., 407, 412. In that case, the trial court denied the intervening respondent's motion for custody or guardianship over her grandchild but ordered weekly visitation with the grandchild. Id., 407–409. Subsequently, in response to an oral motion raised by the Department of Children and Families (department), the court reduced the amount of visitation it had previously awarded to the intervening respondent to once per month. Id., 409–10. This court concluded that the department's motion had sought a modification or alteration of the trial court's original order, thereby triggering a new appeal period under § 63-1 (c) (1), because the motion resulted in the court's "chang[ing]" its prior order of weekly visitation by reducing it to monthly visitation. Id., 414. Therefore, "a portion of the court's original decision, namely, that part requiring weekly visitation, was rendered *ineffective* by the subsequent order of the court reducing visitation to a monthly basis." (Emphasis in original.) Id.

*In re Haley B.* is not controlling here. That case involved the trial court's altering a substantive term of its prior judgment. In the present case, the awards of statutory interest—although increasing the plaintiffs' overall recovery—did not alter the amount of compensatory damages the jury previously had awarded. As to whether the addition of these interest awards to the existing judgment creates a new appeal period under Practice Book § 63-1 (c) (1), our research has not revealed any pertinent Connecticut appellate authority addressing the applicability of that rule in this particular context. We find persuasive, however, the reasoning of the United States Supreme Court in interpreting the analogous federal rule, set forth in rule 4 (a) (4) of the Federal Rules of Appellate Procedure. See *Balf Co.* v.

*Spera Construction Co.*, supra, 222 Conn. 215 (adopting United States Supreme Court's reasoning in *Osterneck* v. *Ernst & Whinney*, 489 U.S. 169, 173–77, 109 S. Ct. 987, 103 L. Ed. 2d 146 (1989), to determine whether judgment was final, "even though the United States Supreme Court was applying [rule 59 (e) of] the Federal Rules of Civil Procedure" and rule 4 (a) (4) of Federal Rules of Appellate Procedure); cf. *Paranteau* v. *DeVita*, supra, 208 Conn. 522–23 (adopting United States Supreme Court's reasoning in determining whether judgment on merits was final for purposes of appeal even though that court applied federal law).

Similar to Practice Book § 63-1 (c) (1), which creates a new appeal period for, inter alia, motions seeking "any alteration of the terms of the judgment," rule 4 (a) (4) (A) (iv) of the Federal Rules of Appellate Procedure creates a new appeal period for motions that, pursuant to rule 59 (e) of the Federal Rules of Civil Procedure, "alter or amend a judgment . . . ." "[F]ederal courts generally have invoked [r]ule 59 (e) [of the Federal Rules of Civil Procedure] only to support reconsideration of matters properly encompassed in a decision on the merits." (Internal quotation marks omitted.) *Buchanan* v. *Stanships, Inc.*, 485 U.S. 265, 267, 108 S. Ct. 1130, 99 L. Ed. 2d 289 (1988). Thus, a postjudgment motion for costs did not purport to alter any aspect of the judgment; rather, it "sought only what was due *because of* the judgment. . . . Assessment of such costs does not involve reconsideration of any aspect of the decision on the merits." (Emphasis in original.) Id., 268. The United States Supreme Court explained that, although the outcome may have been different "if expenses of this sort were provided as an aspect of the underlying action," a motion for costs "raises issues wholly collateral to the judgment in the main cause of action, issues to which [r]ule 59 (e) [of the Federal Rules of Civil Procedure] was not intended to apply." Id., 268–69.

Following the rationale of the United States Supreme Court, we conclude that the plaintiffs' motion for offer of compromise and postjudgment interest did not seek an "alteration" of the judgment within the meaning of Practice Book § 63-1 (c) (1). As we explained in part I A of this opinion, a decision to award offer of compromise interest under § 52-192a is ministerial and does not require the trial court to reconsider any aspect of the decision on the merits.

The same is true of postjudgment interest under § 37-3b, which similarly leaves trial courts with no discretion in determining whether to award such interest. See, e.g., *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 310 Conn. 38, 48, 74 A.3d 1212 (2013) (legislative history of § 37-3b "leaves no doubt that the legislature . . . convert[ed] § 37-3b from a statute that permitted an award of postjudgment interest in the discretion of

the trial court into one that mandates such an award"); see also footnote 4 of this opinion. A claim for interest under § 37-3b also does not require, or permit, the trial court to reconsider the merits of the case because such interest is not an element of the plaintiff's damages in the underlying action. See *Hicks* v. *State*, 297 Conn. 798, 804, 1 A.3d 39 (2010) ("[I]nterest awarded pursuant to § 37-3b is in addition to and based upon the amount of damages as determined by the trier of fact. Postjudgment interest, therefore, cannot be an element of damages."). Indeed, because § 37-3b requires the interest to be calculated "upon the amount of the judgment," a claim for such interest cannot even be considered until after the plaintiff has recovered a judgment against the defendant. Accordingly, an award of interest under § 37-3b is collateral to, and does not alter for purposes of Practice Book § 63-1 (c) (1), the judgment on the merits. See *White* v. *New Hampshire Dept. of Employment Security*, 455 U.S. 445, 451–52, 102 S. Ct. 1162, 71 L. Ed. 2d 325 (1982) (motion for attorney's fees did not alter judgment under rule 59 (e) of Federal Rules of Civil Procedure because it "require[d] an inquiry . . . that cannot even commence until one party has 'prevailed' ").

We therefore conclude that the plaintiffs' postverdict motion for mandatory interest under §§ 52-192a and 37-3b did not seek an "alteration" of the judgment within the meaning of Practice Book § 63-1 (c) (1) and certainly did not render the judgment ineffective. Rather, the motion "sought only what was due *because of* the judgment." (Emphasis in original.) *Buchanan* v. *Stanships, Inc.*, supra, 485 U.S. 268. The twenty day appeal period began to run on October 28, 2016, when the court accepted the jury verdict; see Practice Book § 63-1 (b); and expired on November 17, 2016, approximately one month before the defendants filed their appeal from the judgment rendered in accordance with that verdict on December 16, 2016. Accordingly, the Appellate Court correctly concluded that the appeal was untimely.

II

The defendants claim that the Appellate Court abused its discretion in denying their motion to suspend the rules of practice to permit a late appeal. We disagree.

We begin with the principles governing our review. "The rules of practice vest broad authority in the Appellate Court for the management of its docket." (Internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, 263 Conn. 204, 210, 820 A.2d 224 (2003). Practice Book § 60-2 provides in relevant part that "[t]he supervision and control of the proceedings shall be in the court having appellate jurisdiction from the time the appellate matter is filed . . . . [The court] may . . . on its own motion or upon motion of any party . . . (5) order that a party for good cause shown may file a late appeal . . . unless the court lacks

jurisdiction to allow the late filing . . . ." Practice Book § 60-3 further provides that, "[i]n the interest of expediting decision, or for other good cause shown, the court in which the appellate matter is pending may suspend the requirements or provisions of any of these rules on motion of a party or on its own motion and may order proceedings in accordance with its direction."

"In the absence of jurisdictional barriers, appellate tribunals must exercise their discretion to determine whether a late appeal should be permitted to be heard. . . . Thus, we review the Appellate Court's decision [to deny a motion for permission to file a late appeal] under the abuse of discretion standard. In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 210. In the absence of evidence that the Appellate Court "decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors," its decision must be upheld. (Internal quotation marks omitted.) *State* v. *Holley*, 327 Conn. 576, 628, 175 A.3d 514 (2018).

Consistent with this court's prior cases, we emphasize at the outset that our review of the Appellate Court's decision is especially deferential in the present case in light of the Appellate Court's "broad authority to manage its docket. . . . In the exercise of that authority, [the Appellate Court] legitimately has adopted a policy of docket control that, in other than exceptional cases, the need to address cases that were filed timely outweighs the need to permit appeals that are in fact late." (Citation omitted; internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 212; see also *Ramos* v. *Commissioner of Correction*, supra, 248 Conn. 61.

The Appellate Court has explained that, under this policy, it may "exercise its discretion to consider late appeals, even when a party timely files a motion to dismiss an untimely appeal. . . . Given the large number of appeals . . . filed in [the Appellate Court], however, [the court has] adopted a policy that gives precedence to those appeals that are timely filed . . . . Therefore, when a motion to dismiss that raises untimeliness is, itself, timely filed . . . it is ordinarily [the court's] practice to dismiss the appeal if it is in fact late, and if no reason readily appears on the record to warrant an exception to [the court's] general rule." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Blue Cross/Blue Shield of Connecticut, Inc.* v. *Gurski*, 47 Conn. App. 478, 481–82, 705 A.2d 566 (1998). The Appellate Court has numerous times

"announced this policy, putting all litigants, including the [litigants in the present case], on fair notice thereof." *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 212. This previously announced policy of dismissing untimely appeals in the absence of a readily apparent reason to hear the appeal generally weighs in favor of upholding the Appellate Court's decision to deny a request for permission to file a late appeal.[12] See id., 214.

In determining whether the Appellate Court abused its discretion in the present case, we examine the defendants' motion to suspend the rules of practice to permit a late appeal in order to assess whether the defendants established the requisite "good cause" under Practice Book §§ 60-2 (5) and 60-3. See id., 209 n.9 ("[i]n reviewing the Appellate Court's [decision to deny a motion for permission to file a late appeal], we take into account the [appellant's] representations" in that motion).

In their motion, the defendants asserted, first, that there was "widespread confusion" in the trial court as to the date the judgment was actually rendered, for which they should not be penalized. In particular, they noted the docket entry that erroneously listed the date of the judgment as November 28, 2016. Second, the defendants argued that they had a "good faith belief" that there was no appealable final judgment until the court issued its decision awarding offer of compromise and postjudgment interest on December 12, 2016. Finally, the defendants emphasized that the substantial size of the jury's verdict, $4.2 million, counseled in favor of permitting their untimely appeal to proceed.

We find these justifications unconvincing. Despite the defendants' claim that there was "widespread confusion" in the trial court about the date the judgment was rendered, we see no reasonable basis for any such confusion. Practice Book § 17-2 expressly provides that, if no motions under Practice Book § 16-35 or Practice Book § 17-2A are filed, "the date of the judgment shall be the date the verdict was accepted." Further, Practice Book § 63-1 (b) provides that, "[i]n civil jury cases, the appeal period shall begin when the verdict is accepted." These provisions plainly should have put the defendants' counsel on notice that, when the trial court accepted the verdict on October 28, 2016, and no subsequent motions under Practice Book § 16-35 or Practice Book § 17-2A were filed, a final judgment had been rendered and the twenty day appeal period had began to run.

In this regard, the erroneous entry placed on the docket suggesting that the judgment had been rendered in favor of the plaintiffs on November 28, 2016, is of no moment. The twenty day appeal period expired on November 17, 2016, eleven days *before* that erroneous entry appeared on the docket. We therefore fail to see

how the erroneous entry could have been the cause of the defendants' failure to appeal on or before the November 17, 2016 deadline.

Nor did the Appellate Court act unreasonably when it concluded that the defendants had failed to show good cause on the basis of their claimed "good faith belief" that there was no appealable final judgment until the court issued its decision awarding interest on December 12, 2016. Again, Practice Book § 17-2 explicitly provides that "the date of the judgment shall be the date the verdict was accepted." Further, even if the defendants had harbored some uncertainty about the date final judgment was rendered, "[t]he filing requirements prescribed by [our rules of practice] cannot be abrogated . . . by a party's perception that appeal is unnecessary during the appropriate appeal period. The fact that the need for an appeal may not have been evident until after the mandated filing period passed is not a circumstance that impels us to bypass the requirements of our rules of practice." *Lucisano* v. *Lucisano*, 200 Conn. 202, 206, 510 A.2d 186 (1986). Moreover, the defendants have offered no reason why, if there was any doubt in their minds as to whether the judgment was final on October 28, 2016, they did not "take the obviously safer route"; *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 212; and immediately appeal from the judgment rendered in accordance with the jury's verdict, which they later could have amended to include any claims challenging the court's subsequent interest awards.[13] See, e.g., *Randazzo* v. *Sakon*, 181 Conn. App. 80, 87–88 n.7, 189 A.3d 616, cert. denied, 330 Conn. 909, 193 A.3d 560 (2018); see also Practice Book § 61-9.

The concurring and dissenting justice contends that the Appellate Court abused its discretion in denying the defendants' motion to suspend the rules of practice to permit a late appeal because "the barren state of the law" gave the defendants an objectively reasonable, good faith belief either (1) that the judgment was not yet final when the court accepted the verdict, or (2) that the plaintiffs' subsequent motion for interest triggered a new appeal period under Practice Book § 63-1 (c) (1). Although we agree that an objectively reasonable mistake of law may constitute good cause for filing a late appeal, we disagree that the Appellate Court was required to determine that the defendants' untimeliness was due to any such justifiable mistake of law in the present case.

With regard to the finality of the judgment, although there were no appellate cases definitively holding that unawarded offer of compromise interest does not delay the finality of a judgment on the merits, our decision today that it does not delay finality should come as no surprise to the defendants. As we explained in part I A of this opinion, this court's decisions have uniformly

recognized that postverdict claims for relief delay finality only if they are related to compensation and require an assessment of the underlying merits of the case. See *Hylton* v. *Gunter*, supra, 313 Conn. 485 n.12; *Broadnax* v. *New Haven*, supra, 294 Conn. 297; footnote 9 of this opinion and accompanying text. Offer of compromise interest meets neither of these requirements. See *Accettullo* v. *Worcester Ins. Co.*, supra, 256 Conn. 673; *Blakeslee Arpaia Chapman, Inc.* v. *El Constructors, Inc.*, supra, 239 Conn. 742, 752. Thus, established final judgment principles should have put the defendants' counsel on notice that offer of compromise interest is not a type of relief that delays finality.[14]

In fact, this court, in 2009, noted that undetermined offer of compromise interest does not affect the finality of the judgment. *Earlington* v. *Anastasi*, supra, 293 Conn. 196–97 n.3. Although that aspect of *Earlington* was dictum, it was cited in a leading treatise on appellate practice for the proposition that "the lack of a ruling on a claim for [offer of compromise interest under § 52-192a] does not deprive the court of appellate jurisdiction on an otherwise final judgment." W. Horton & K. Bartschi, Connecticut Practice Series: Connecticut Rules of Appellate Procedure (2019–2020 Ed.) § 61-1, p. 84, authors' comments. Thus, to the extent that the defendants claimed that they were confused about the operation of our final judgment rules in this context, the Appellate Court was well within its discretion to regard such confusion as unreasonable.[15] See *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 212 (rejecting argument that mistake of law justified late appeal in part because correct rule was discussed in prior case law and cited in authoritative treatise on appellate practice).

Nor was the Appellate Court required to determine that the defendants' untimeliness was due to a reasonable, albeit mistaken, belief that Practice Book § 63-1 (c) (1) provided them with a new appeal period. Nothing in the text of § 63-1 (c) (1), or our case law interpreting it, remotely suggests that a postjudgment motion for mandatory interest, such as the one that the plaintiffs filed on November 8, 2016, alters any aspect of the underlying judgment. Although there was no prior appellate decision holding that § 63-1 (c) (1) *does not* apply to this type of motion, the absence of a case directly on point, although something that the Appellate Court could consider,[16] does not mean that there was "confusion" in the law to such an extent as to render the Appellate Court's refusal to hear a late appeal a manifest abuse of discretion.[17]

The present case is similar in many respects to *Alliance Partners, Inc.* In that case, this court concluded that the Appellate Court did not abuse its discretion in denying an appellant's motion for permission to file a late appeal when the appeal was filed one day after the

deadline and the justifications proffered by the appellant in its motion—that the rules of practice governing how to calculate the twenty day appeal period were confusing—were unpersuasive. Id., 211–12. This court explained that there was "no reasonable basis" for the appellant's confusion in light of prior case law and Practice Book § 63-2, which "clearly indicate[d]" the way to calculate the twenty day period. Id.

We disagree with the concurring and dissenting justice's attempts to distinguish *Alliance Partners, Inc.* As in that case, we see no reasonable basis, in light of our prior discussion in this opinion, for the defendants' claimed belief that there was no appealable final judgment when the trial court accepted the verdict on October 28, 2016, or that the plaintiffs' subsequent motion for offer of compromise and postjudgment interest triggered a new appeal period. Additionally, by disallowing an appeal filed just one day after the deadline, even though there is a statutory right to appeal and the twenty day period is not jurisdictional, an inescapable lesson from *Alliance Partners, Inc.*, is that adhering to the Appellate Court's policy of denying untimely appeals in the absence of exceptional circumstances is one that this court takes seriously.

Finally, we disagree with the defendants that the size of the verdict, $4.2 million, renders the Appellate Court's refusal to hear the appeal an abuse of discretion, particularly in light of the wholly inadequate explanations proffered by the defendants for why they failed to appeal until approximately one month after the deadline. To be sure, this court has recognized that an "unyielding policy requiring strict adherence to an appellate limitation period—no matter how severe or unfair the consequences—does not serve the interests of justice." *Banks* v. *Thomas*, 241 Conn. 569, 586, 698 A.2d 268 (1997). Nonetheless, the principal question is whether the defendants have met their burden of "establish[ing] good cause for [their] failure to file a timely appeal." *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 211. They plainly have not done so. Although the gravity of the consequences of a dismissal to the appealing party is not wholly irrelevant to the good cause analysis, we are not persuaded that, under the circumstances of the present case, the size of the verdict, in and of itself, compels the conclusion that the Appellate Court abused its discretion.[18]

In summary, in light of our limited scope of review, the Appellate Court's well known policy of managing its own crowded docket, and the lack of any persuasive justification for the late filing, we cannot conclude that the Appellate Court manifestly abused its broad discretion or worked injustice by determining that the defendants had failed to establish good cause under Practice Book §§ 60-2 (5) and 60-3. See id., 210 ("[r]eversal is required only where an abuse of discretion is manifest

or where injustice appears to have been done" (internal quotation marks omitted)). Whether we might have exercised our discretion differently is not the question before us. We reiterate, however, our observation in *Alliance Partners, Inc.*, that our decision in the present case "does not mean . . . that any exercise of discretion by the Appellate Court in denying [a motion for permission to file] a late appeal will find a welcoming eye in this court. . . . Our decision in the present case means only that each case must stand or fall on its own merits; and the merits in this case do not persuade us that the Appellate Court abused its discretion." (Citations omitted.) Id., 214–15.

The judgment of the Appellate Court is affirmed.

In this opinion McDONALD, KAHN and ECKER, Js., concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

** June 3, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Although the complaint refers to Jenniyah Georges as the named plaintiff, it is clear that the only proper, remaining plaintiff is Leoma, who, together with Jean Georges, brought this action as the next friend of Jenniyah Georges. See *DiPietro* v. *Farmington Sports Arena, LLC*, 123 Conn. App. 583, 585 n.1, 2 A.3d 963 (2010), rev'd on other grounds, 306 Conn. 107, 49 A.3d 951 (2012); see also *Mendillo* v. *Board of Education*, 246 Conn. 456, 460 n.3, 717 A.2d 1177 (1998) (recognizing general rule that minor children may bring action only by way of parent or next friend), overruled in part on other grounds by *Campos* v. *Coleman*, 319 Conn. 36, 123 A.3d 854 (2015). Leoma also brought claims against the defendants in her individual capacity, seeking damages for emotional distress. The jury returned a verdict for the defendants with respect to these claims, which are not at issue in this appeal. Jean Georges, Jenniyah Georges' father, also was originally named as a plaintiff in both his representative and individual capacities but subsequently withdrew from this action. We refer to Leoma and Jenniyah Georges individually by name and collectively as the plaintiffs.

[2] See General Statutes § 52-192a (a); Practice Book § 17-16.

[3] General Statutes § 52-192a (c) provides in relevant part: "After trial the court shall examine the record to determine whether the plaintiff made an offer of compromise which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain specified in the plaintiff's offer of compromise, the court shall add to the amount so recovered eight per cent annual interest on said amount . . . . The interest shall be computed from the date the complaint in the civil action . . . was filed with the court if the offer of compromise was filed not later than eighteen months from the filing of such complaint . . . ." See Practice Book § 17-18 (providing for identical computation method).

[4] General Statutes § 37-3b provides in relevant part: "(a) For a cause of action arising on or after May 27, 1997, interest at the rate of ten per cent a year, and no more, shall be recovered and allowed in any action to recover damages for injury to the person, or to real or personal property, caused by negligence, computed from the date that is twenty days after the date of judgment or the date that is ninety days after the date of verdict, whichever is earlier, upon the amount of the judgment. . . ."

[5] As to the jury verdict, the defendants claimed that the court had improperly admitted certain expert testimony and provided the jury with an incorrect instruction on damages.

[6] Practice Book § 60-2 provides in relevant part: "[The court] may . . . upon motion of any party . . . (5) order that a party for good cause shown may file a late appeal . . . unless the court lacks jurisdiction to allow the late filing . . . ." Although § 60-2 was amended in October, 2017, to take effect in January, 2018, that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current version of § 60-2.

[7] Practice Book § 60-3 provides: "In the interest of expediting decision, or for other good cause shown, the court in which the appellate matter is pending may suspend the requirements or provisions of any of these rules on motion of a party or on its own motion and may order proceedings in accordance with its direction." Although § 60-3 was amended in October, 2017, to take effect in January, 2018, that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current version of § 60-3.

[8] We granted the defendants' petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court properly dismiss that portion of the defendants' appeal relating to the judgment rendered on October 28, 2016?" And (2) "[d]id the Appellate Court abuse its discretion when it denied the defendants' motion to [suspend the rules of practice to permit] a late appeal?" *Georges* v. *OB-GYN Services*, *P.C.*, 330 Conn. 905, 192 A.3d 426 (2018).

[9] In concluding in *Balf Co.* that claims for discretionary prejudgment interest can postpone the rendering of an appealable final judgment, this court distinguished between claims for that type of relief and claims for attorney's fees, which this court had previously held in *Paranteau* v. *DeVita*, 208 Conn. 515, 522–23, 544 A.2d 634 (1988), do not affect finality. See *Balf Co.* v. *Spera Construction Co.*, supra, 222 Conn. 214–15; see also footnote 10 of this opinion. Adopting the United States Supreme Court's reasoning in *Osterneck* v. *Ernst & Whinney*, 489 U.S. 169, 175–77, 109 S. Ct. 987, 103 L. Ed. 2d 146 (1989), this court observed: "First, unlike attorney's fees, which at common law were regarded as an element of costs and therefore not part of the merits judgment . . . prejudgment interest traditionally has been considered part of the compensation due [the] plaintiff. Second, unlike a request for attorney's fees or a motion for costs, a motion for discretionary prejudgment interest does not rais[e] issues wholly collateral to the judgment in the main cause of action . . . nor does it require an inquiry wholly separate from the decision on the merits . . . . In deciding if and how much prejudgment interest should be granted, a [trial] court must examine—or in the case of a postjudgment motion, reexamine—matters encompassed within the merits of the underlying action. . . . Third, the conclusion that a postjudgment motion for discretionary prejudgment interest postpones the finality of a judgment on the merits helps further the important goal of avoiding piecemeal appellate review of judgments." (Citation omitted; internal quotation marks omitted.) *Balf Co.* v. *Spera Construction Co.*, supra, 214–15.

[10] Under the bright-line rule of *Paranteau*, requests for attorney's fees categorically "will be treated separately" from decisions on the merits regardless of whether the "particular . . . claim for attorney's fees was collateral to, or an integral part of, the judgment on the merits." *Paranteau* v. *DeVita*, supra, 208 Conn. 522–23; see also *Hylton* v. *Gunter*, supra, 313 Conn. 483–84; *Benvenuto* v. *Mahajan*, 245 Conn. 495, 498–500, 715 A.2d 743 (1998). But see *Hylton* v. *Gunter*, supra, 485 n.13 (noting that "attorney's fees that themselves form the basis of a plaintiff's claim for compensatory damages, such as those occasioned by an insurer's breach of its duty to defend, are conceptually different and must be established in order to have an appealable final judgment").

[11] Practice Book § 63-1 (c) (1) provides in relevant part: "Motions that, if granted, would render a judgment, decision or acceptance of the verdict ineffective include, but are not limited to, motions that seek: the opening or setting aside of the judgment; a new trial; the setting aside of the verdict; judgment notwithstanding the verdict; reargument of the judgment or decision; collateral source reduction; additur; remittitur; *or any alteration of the terms of the judgment.*

"Motions that do not give rise to a new appeal period include those that seek: clarification or articulation, as opposed to alteration, of the terms of the judgment or decision; a written or transcribed statement of the trial court's decision; or reargument of a motion listed in the previous paragraph. . . ." (Emphasis added.)

[12] The concurring and dissenting justice dilutes our deferential standard of review of the Appellate Court's ruling on a motion for permission to file a late appeal to the point of being virtually indistinguishable from plenary review. Specifically, according to the concurring and dissenting justice, if this court can discern on appeal an "objectively reasonable basis for confusion, uncertainty or mistake about when the appeal period has run or has been tolled," and "no other factors weigh against granting the motion," then the Appellate Court necessarily abused its discretion in failing to find good

cause for the late appeal. Although objectively reasonable confusion about the operation of our appellate rules certainly is a factor to consider when reviewing the Appellate Court's decision to deny a motion for permission to file a late appeal, we disagree that this or any other factor is dispositive. Rather, abuse of discretion review mandates that we make "every reasonable presumption . . . in favor of the correctness of the [Appellate Court's] ruling." (Internal quotation marks omitted.) *Alliance Partners*, *Inc.* v. *Voltarc Technologies*, *Inc.*, supra, 263 Conn. 210. More to the point, as we explain subsequently in the body of this opinion, the Appellate Court was justified in concluding that the defendants' proffered explanations for their confusion about the date final judgment was rendered or when the appeal period began to run did not amount to good cause to excuse their untimely appeal.

[13] Contrary to the concurring and dissenting justice's suggestion, we are not advocating for an " 'appeal early and often' approach" to appellate litigation. Footnote 14 of the concurring and dissenting opinion. Nor did this court endorse such an approach in *Alliance Partners*, *Inc.*, by making the observation that "it is difficult to see why, if the plaintiff was even somewhat confused about [the proper method for calculating the twenty day appeal period] . . . it nonetheless opted to wait for the potential twenty-first day to file [its appeal], rather than to take the obviously safer route and file on the potential twentieth day." *Alliance Partners*, *Inc.* v. *Voltarc Technologies*, *Inc.*, supra, 263 Conn. 212.

[14] Relying on *Nolan* v. *Milford*, 86 Conn. App. 817, 819, 862 A.2d 879 (2005), the concurring and dissenting justice contends that there was "at least a straight-faced argument" that final judgment was not rendered until the trial court resolved the parties' dispute as to the proper "end date" for calculating the offer of compromise interest. We disagree. *Nolan* addressed *discretionary* prejudgment interest under General Statutes § 37-3a; *Nolan* v. *Milford*, supra, 818–19; which this court has long recognized must be awarded before there can be an appealable final judgment. See *Balf Co.* v. *Spera Construction Co.*, supra, 222 Conn. 214–15; footnote 9 of this opinion and accompanying text. The plaintiffs' motion did not seek discretionary prejudgment interest under § 37-3a but, rather, mandatory interest under §§ 37-3b and 52-192a. *Nolan* does not suggest that claims for such awards delay the rendering of an otherwise appealable final judgment.

[15] The concurring and dissenting justice relies on additional aspects of the trial court proceedings that, in its view, provided the defendants with an objectively reasonable belief that the judgment was not final when the verdict was accepted on October 28, 2016. First, the concurring and dissenting justice notes that the plaintiffs filed a motion to request the offer of compromise interest even though trial courts are required to impose such interest sua sponte without the need for a motion. We fail to see why this would have added to the defendants' confusion. If anything, we believe it is objectively *unreasonable* to suspect that a claim for relief that must automatically be awarded at the statutorily prescribed rate could affect the finality of the judgment.

Second, the concurring and dissenting justice contends that the plaintiffs' motion for interest suggested that the plaintiffs themselves believed that the judgment had not yet been rendered on October 28, 2016. He relies on the following statement from the plaintiffs' motion: "Section 52-192a (c) directs the court to add 8 percent annual interest to the amount recovered by the plaintiffs, running from the date the complaint in this action was filed . . . to ninety days following the rendering of the verdict, which occurs on January 26, 2017." This is a true statement: January 26, 2017, *is* approximately ninety days after the verdict was returned on October 28, 2016. The plaintiffs made the statement in the course of arguing for what they believed the correct "end date" was for calculating the offer of compromise interest when postjudgment interest under § 37-3b also is in play. Although this argument reflected the plaintiffs' understanding about how the competing interest statutes operate, it does not suggest any confusion on the plaintiffs' part about the date final judgment was rendered.

[16] The concurring and dissenting justice asserts that, because the Appellate Court denied the defendants' motion to suspend the rules of practice to permit a late appeal in an order without any explanation, "we have no idea whether the Appellate Court considered the absence of on point case law or whether it simply enforced deadlines in an uncompromising fashion." Footnote 6 of the concurring and dissenting opinion. To the contrary, we must indulge "every reasonable presumption . . . in favor of the correctness of the [Appellate Court's] ruling." (Internal quotation marks omitted.) *Alliance Partners*, *Inc.* v. *Voltarc Technologies*, *Inc.*, supra, 263 Conn. 210.

Therefore, to the extent that the defendants raised the lack of pertinent authority in their motion to suspend the rules of practice to permit a late appeal, we must presume that the Appellate Court considered it in the context of conducting a proper inquiry into whether there was good cause for the defendants' failure to file a timely appeal.

[17] The concurring and dissenting justice contends that, in fashioning postjudgment interest awards under § 37-3b, trial courts, at least arguably, have discretion to determine the appropriate interest rate because the statute does not mandate any particular rate but merely provides that interest shall be calculated "at the rate of ten per cent a year, and no more . . . ." General Statutes § 37-3b (a). Even if we assume, without deciding, that courts do have such discretion, this could not reasonably have suggested to the defendants that an award of § 37-3b interest "alter[s]" the judgment rendered in connection with the jury's award of compensatory damages so as to create a new appeal period under Practice Book § 63-1 (c) (1). Indeed, this court explained years before the defendants' appeal that § 37-3b interest is separate and distinct from compensatory damages awarded by a jury: "[I]nterest pursuant to § 37-3b is computed only after and upon the amount of judgment. It is calculated *after* the trier of fact has calculated the amount of damages . . . . If, within twenty days, the defendant pays the damages awarded, then no interest is due. . . . Interest accrues only if the damages are not paid. An award of interest, therefore, first necessitates a factual finding of a debt now due—a specific liquidated sum due. *Thus, interest awarded pursuant to § 37-3b is in addition to and based upon the amount of damages as determined by the trier of fact. Postjudgment interest, therefore, cannot be an element of damages.*" (Citation omitted; emphasis altered; internal quotation marks omitted.) *Hicks* v. *State*, supra, 297 Conn. 804. A review of *Hicks* should have suggested to the defendants that the plaintiffs' motion for § 37-3b interest did not alter the underlying judgment for purposes of Practice Book § 63-1 (c) (1).

[18] We note that the concurring and dissenting justice also contends that "the plaintiff[s] did not argue that [they] would have suffered any prejudice or undue delay from the granting of permission to file a late appeal beyond the delay normally associated with a timely filed appeal." We read the plaintiffs' opposition to the defendants' motion to suspend the rules of practice to permit a late appeal, however, as arguing that allowing the late appeal would cause undue delay and that they would be prejudiced because the late appeal would further delay their access to the damages and interest awards, which, given Jenniyah Georges' debilitating injuries, "Jenniyah [Georges] needs now."

————————————————